May it please the court, my name is Lee Chen. I represent the plaintiffs' appellants in this case from the law office of Scott Schutzman. For purposes of oral argument, this case can be broken down into two main issues. From a procedural standpoint, the district court made a series of repeated arbitrary pre-trial rulings, resulting in substantial unfair prejudice to plaintiffs' ability to file their motion for class certification. Why does that make a difference? If the summary judgment was properly granted, why are we concerned with the class certification motion? Well, the class certification motion was filed before the summary judgment motion, and the summary judgment motion is my All the other issues, would it not, if we uphold the summary judgment? If summary judgment had been properly granted. But it's our contention that summary judgment was improperly granted based on an erroneous failure to adhere to the patrolling case in the circuit. So we believe that had we prevailed on summary judgment, we would have also been able to certify a class had we been given that opportunity. But we were not given that opportunity from the very start, beginning with a scheduling conference in which plaintiffs were given a very short time period in order to do discovery for the class certification motion. And upon the objection of Plaintiff's counsel at that time, the judge assured Plaintiff's counsel that if you need more time to do class discovery, you will have more time. That's in the records. Well, how much time did they actually have? From the actual scheduling order, which was in November, the judge ordered the class certification motion to be filed in March. Did they take any action at all between November and March to move up on the class certification issue? Yes. Prior to the deadline for the class certification motion, which is our first assignment of error, plaintiffs moved ex parte to extend the time period for 90 days. I understand that, but between November and March, did they take any action to move up on the discovery for class certification? You mean for continuance? No, not for continuance, for taking discovery. Yes. Yes. There was discovery propounded in December, which was responded to at the a letter demanding a discovery conference. But at that time, it became evident that there's no way by February to conduct a discovery conference and to be able to get all the discovery that we were seeking in order to certify our class allegations prior to a March 19th date. So plaintiffs went in ex parte to seek a continuance, and without any explanation and despite the fact that the court had previously assured plaintiffs that they would be given until June if they came in and sought an extension, the court, for unexplained reasons, denied that request. And as a result, plaintiffs were required to file their class certification motion a week later without any discovery. As it's well known that discovery is necessary in order to have a chance to certify a class. And so with that, knowing that that was indeed the case, that plaintiffs weren't allowed to have discovery, defendant then took the position, well, I don't care about your discovery, you're not going to get anything from the class until the certification motion is decided. So based on the court's ruling, plaintiff never had a shot to certify a class because it was never allowed a real chance to get discovery. But it had from November until March to take discovery. Right. And plaintiffs did conduct discovery. So they did take discovery. Plaintiffs did propound written discovery. And the responses that came back at the end of January had nothing on plaintiff's class allegations. Any requests that were made concerning class allegations were objected to and not responded to. So you had from January until March to conduct further discovery. From January until March. And the reason why there wasn't any follow-up between that time was plaintiff's case was at that time engaged in an arbitration preparing for trial in another case. And that fact was given to the court in order to ask for that extension. And there is authority saying that that actually constitutes good cause when you're asking for a first extension. And so as a result of the denial of the opportunity to conduct further discovery, when plaintiff went ahead and filed their discovery motion to try to get these class, get this class discovery, defendant took the position, well, we're not going to give you any class discovery until the motion is decided. And when the motion was decided, well, you're not going to get any class discovery. And then when plaintiff sought to file their motions to compel the court, the magistrate or the judge, I should say, based on erroneous ruling, erroneous reading of the central district and local rules, 37 required plaintiff to negotiate each and every discovery issue to an impasse. Rule 37 doesn't require that. Rule 37 only requires that you either negotiate in good faith or to negotiate to an impasse. And presumably the rationale behind that is if the other side doesn't want to cooperate with your discovery request, if they say, well, we're not going to give you anything, then what is there to negotiate to an impasse? So it was plaintiff's belief that if they're not going to give us this class discovery, then to protect our rights, we need to have a motion to compel on file. So let me ask you, what discovery did you seek that would have helped you succeed on the class certification motion? One example of discovery that was sought was the identity of inmates and their attorneys. That discovery, that request was objected to on the grounds that it would be too difficult. It would be burdensome for them to compile this list, and they claimed that in order to get the names of the attorneys, they would have to search all the court files to get this information. As it turns out, they have the identity of inmates in their computer system, so there wouldn't have been a huge burden to do that. And then further discovery after the certification motion had been denied and after the motion to compel had been denied, it later, it was later revealed that they had the information for each inmate's attorney in a document they call a booking file. When a, when an inmate is booked, if they have an attorney, that's put, noted on the booking file. But let's assume you had gotten that information. What would you have done with it? Because when you look at Judge Collins's denial of the class certification, what she's saying is your class is just too broad. You can't, the class can't be every inmate that was there from 2003 to 2006. You don't even know if they talked to their attorneys or not. Would you have had to use that to pose every inmate to find out whether they had, number one, made confidential attorney-client communications over the telephone, and two, whether the subject of those conversations was used in a way to prejudice them in some way in their existing proceedings? Absolutely. First of all, this wasn't an issue that we were aware of at the time that, at the time the district court was making the decision on class certification. Had we known this, we would have brought it forward. But had we known who the, which attorneys were and had clients that were in the jails, it would be easy to telephone the attorneys, ask them, did you ever have a conversation between this time period with your client? If they did, the chances are, based on the telephone recording policy, that it was recorded. And if the attorney is telling us that they had probably had conversations recorded, that's one person. And then we would just conduct discovery that way. But we were never even allowed this information, which was clearly in their possession. All right. You have five minutes left. Can we get to really what is the dispositive question, which is, you know, whether there was applied consent under, that would stop your Federal Wiretap Act claim and whether your client had a reasonable expectation of privacy given the notices that he was given? Yes, Your Honor. Based on the research, this is an issue that was left open by the Van Poit decision. But that, the court in that decision made a special note for a reason to distinguish between that case and a case involving communication between an attorney-client. Right. Did they use the language properly placed? What does that mean? Well, I believe a properly placed one is one that's placed through their existing channels, not something if a client steals a cell phone in a jail and makes a call and somehow it's intercepted, I don't think that would be something that would be acceptable. But the court didn't define what properly placed meant. So a reasonable, plain-meaning interpretation of that was just a call that's placed through the channels that the jail allows. But with respect to the issue, with respect to consent, the research has shown two circuits have decided on this, on this issue, the Eighth Circuit and recently the First Circuit. But in each one of those circuits, the Eighth Circuit and recently the First Circuit decision was written by Supreme Court justices. I'll get to her opinion in a second, if I may. But in both of those cases, each of those cases, it was clear that the inmate or the attorney knew that his call was being recorded. It was either manifested by an express statement made during the call in which they were saying, oh, you know, this phone call is being recorded, or they talked in code, or they signed a statement when they come into the jail acknowledging that they are consenting to their telephone calls being recorded. But why wasn't it sufficient to let your client know that any calls, any calls may be recorded at any time, as they did in several places? I mean, doesn't any calls embrace any and every call, regardless of the subject? Well, it's plaintiff's opinion that the county inserted the permissive language may for a reason, and that was to create this false belief that maybe the county would have some certain circumstance, whether it was for law enforcement reasons or institutional security reasons, that they would record. The may language does not inform inmates that every single call is recorded, including your conversations with your attorney. And from an attorney's perspective, for example, if you look at the Novak case, which was the case ruled on recently in the First Circuit, in that case, the county or the municipality, the jail, tried to compile a list of attorneys in order to put them into the system so they can be filtered. That was not done here. So an attorney could reasonably expect that in this county, they know who the inmates are. Most criminal attorneys would be aware of a booking file. They would know that their name is in the booking file. It would be reasonable for an attorney to expect that if they know who the attorney is, they would unilaterally put them in so that their number would not be recorded. But they didn't do that either. And it is these problems with the county's policy and how this policy is distinguished from the policies that were at issue in the First Circuit and at issue in the Eighth Circuit which differentiates this case from that case. Well, and the California State Court has already determined that what the county did was a violation of State law. But they also found that your client was not prejudiced in any way because none of the confidential material was used in the course of his trial. That hearing was on a different issue. It was on the issue of whether the prosecution should be recused. So the analysis is a little bit different. But with respect to prejudice, we've alleged in our papers the prejudice as a result to the attorney having to do extra work in order to bring forth a motion to recuse the prosecutor and also for the client who was not able to have the trial when they were ready to prepare for trial. But most importantly, the wiretapping statute does not require prejudice. The wiretapping statute makes it a crime to record. It doesn't require prejudice. If you violate that statute, it gives rise to statutory damages. Whether notice is given or not. Well, it depends on the notice, which is precisely the issue here. It's the adequacy of notice. It's the clarity in which notice is given. In the cases that we're dealing with in the First Circuit and the Eighth Circuit, notice was pretty clear. If they admit we know we're being recorded, that's one issue. But that's not the case here. And the differences in policy whereby the county in this circumstance knew that there was a filtering policy but did not even try to tell any private counsel about this filtering policy, and only after the lawsuit was filed did they add this proviso at the end of their message to inform private counsel of this policy, the fact that they had the names of the attorneys there, which they could have unilaterally put into the system, but they didn't. And it's these problems that distinguish this case from the First Circuit and the Eighth Circuit. One thing, I don't know if their notice is still adequate, because I guess the notice now refers to the penal code section? Correct. The California penal code section. Right. 636? Yes. And does that involve the attorney-client privilege? 636 makes it illegal to record attorney-client communications. Right. And so would an ordinary inmate be put on notice of that by a reference to the statutory provision? Well, that's what distinguishes this case from most of the other cases cited by the county in this case, because this only concerns attorney-client communications. So presumably, the only time this would ever come up is if an attorney is calling a client or a client is calling an attorney. In either sense, the attorney is probably going to hear it. Now, there may be a problem if one of their paralegals calls or secretary calls. That might create an issue. Yeah. But who's the one who has to give consent? Well, ultimately, it has to be the client. Right. It has to be the inmate. Right. It's required that the inmate give consent. Right. If the inmate doesn't understand what CPC 636 is. We would hope that the attorney would be the client. Right. But I'm just saying I'm not sure the county has remedied their violation. I still am not sure that you've prevailed, but I think the county still might have some problems. Well, I understand. They want to make it as unintelligible to the client itself, for the inmates, as possible, which was the whole problem with their policy in the first place. And one last question, and you're over your time. I just wonder, are you arguing that there is a heightened standard for consent when the attorney-client privilege is implicated? Absolutely. As opposed to consent for ordinary conversations, conversations with your friends like Ben Poik. Absolutely. And the attorney-client privilege obviously has a long history. There's case law going back to the 50s showing that jail calls from an attorney to a client is fundamental. And, therefore, you can't put the attorney-client calls in the same basket as just regular calls made from a jail. And there are case law, the Huiguanan case and the Lonegan case, which show that in the context of attorney-client communication, the county's got to do a lot more than just have a policy and just start recording. Thank you very much. All right. Thank you, counsel.  Chris Lockwood for the Defendant's Appeal. Let me answer the last question first. Penal Code Section 636 actually applies to attorney-client communications with medical and religious advisors. So they're kind of lumped together, and that's why the wording was broader. There's just attorneys on that. It's not revolving here because it's a State issue, but I'll address that first. I think it's important to keep separate the quite distinct issues involving the Federal Warrant Office statutes, the Fourth Amendment and the Sixth Amendment, because they present different sets of issues. I went through the briefs again in preparation for argument, and while I addressed the Sixth Amendment as a precaution, you won't find a word about it in the opening brief or in the reply brief. I think that's pretty significant. If you look at the recent decision from the First Circuit in the Novak case, it makes a very clear distinction between the Fourth Amendment and the Sixth Amendment. The right to counsel is a very important right. I take my communication with my clients very seriously. But the first thing I always do is make sure that nobody else around is listening. And if I got the notice in advance, that triggers a whole different set of rules. As the Novak case holds, to the extent that the Federal law is applicable to this question, it's a Sixth Amendment right. That just has not been briefed here. Under the Fourth Amendment and under the Federal wiretap statutes, we have the question of consent. There's been repeated allegations of the briefs, and I heard it again this morning, that the plaintiffs didn't know they're being recorded. I quoted their deposition testimony at several pages, starting at page 8 of my brief, in which they both expressly admitted that they received actual notice. There's no dispute about that. Right now, what did they receive notice of? As to the inmate, he received, number one, it was assigned by the telephone. Number two, there was a calling card. What did the notice say? My recollection is that the call may be recorded or monitored. May. So is it reasonable to assume from that that you're giving notice that all calls, including confidential attorney-client communication calls, would be recorded? Two-part answer. First part of that one is I cited a series of cases in the brief in which most of the notices that are given say may be recorded, are subject to monitoring. I don't think any of them actually say will be recorded. Number two, there is no policy of recording all calls, as is detailed. There is the filtering policy that's been in place since the beginning. Which is never dissent. This is the key part of the case that troubles me. So you knew, I mean your client knew, when it implemented this policy in 2003, that included the element of the filtering and the system for attorneys registering you knew that that was an obligation under federal and state law, that you were not allowed to record confidential attorney-client communications. But you did not disseminate that policy to anybody until 2006. So how could anyone know how to avail themselves of that policy? Okay. A few-part answer on this one again. Number one, this is a suit for damages and for injunctive relief. As for the injunctive relief portion, the current notice does give an express phone number to call. So I think that it resolves that issue. As far as the past time period, it's the obligation of the attorney who wants to make a confidential call to do, take steps to make it confidential. The policy was in place and there was a procedure had there been a contact. What about the inmate who wants to make a confidential call? And once again- He thinks his only way to do it is by using the prison phone. Okay. Actually, that's an important point I wanted to make. I cited the Lentz case, which cites a series of cases as well, which holds there is no right to make telephone calls to the attorneys. There is a right to have confidential communications, but it doesn't have to be by telephone if you're being personal. It is clear that the Riverside County Jail violates state and federal law by recording confidential attorney-client communications. It's prohibited. And you had a system in place that did that. I think you're assuming something that isn't quite accurate. You're starting with the assumption that there is a Federal constitutional right by an attorney to make a telephone call to an inmate at a jail. No, I'm not. No, I'm not. I'm not assuming that. I know there are other avenues of communication, but let's just start with state law. You're not allowed to record the confidential communications between the attorney and his client. Well, once again, California law has a consent exception and a law enforcement exception. I didn't brief those because they're not before the court. And I think also the reason the consent exception is the district court didn't reach law enforcement, but it definitely reached consent. And California has a similar consent and a similar law enforcement exception. Right. So I don't think this did violate California law. Only if you assume that the consent, that the notice was adequate and that the consent was knowing and voluntary. Well, the cases hold that implied consent is you have the notice, it will be recorded, and then you go ahead and call. Right. And so the issue then becomes was the notice adequate. And I think the notice is almost identical to the notice in the dozen or so cases that I cited here. I don't think any of the cases, as a few of the cases do talk about having subnotice of the policy for making an unrecorded call to an attorney. Most of them don't. And the Lenz case expressly did address that. The appellate court didn't reach the issue, but the district court did in considerable detail and hold that there isn't any obligation to have any opt-out policy at all, as long as you have an in-person or mail communication. Starting point on that one. And then you also have the Novak case also points out that even if there's a violation of state law, that does not create a violation of Federal law. The key issue here is the telephone calls are made to the computer system to a telephone number, and that's all that the computer knows. If the attorney wants to make a confidential call, after hearing this notice and after the inmate hears the notice, they have an obligation to take a very minimal step of calling the jail or the inmate asking them what is the procedure for making a confidential call. Or they can go in person and ask the same question. They have to take some minimal steps to protect the privilege if they want to be privileged. They didn't do that. I also want to talk briefly about the issue of damages that's armed today. I think that's important. There was an allegation here of prejudice. Mr. Medina was convicted of first-degree murder. And a delay in being convicted of murder is not prejudiced. If anything, his status is better as a pretrial inmate than post-conviction. So the delay that he got out of this was a benefit, not a harm. Let's see. Those are the points that I wanted to make as far as the merits. Did the court want to address the issues about the discovery of confidentiality? Excuse me. I didn't hear. What do you see as the narrow issue before us today? I don't quite follow the question. I gather you didn't, so I listened to you. The question, you must tell us, if you want to tell us, what you think we have to decide in order to decide the case if you would like to have it resolved. Okay. I don't think you get past any issues. I don't think you get to the second, third, and fourth issues at all unless you get past summary judgment. On summary judgment, I think under the Wiretap statutes and the Fourth Amendment, the question is was there either consent based on adequate notice that the call is subject to reporting, or does the law enforcement exception apply? And I think the evidence is pretty clear. I'm disputing from the plaintiff's own mouth, in fact, that they had fully adequate notice that the calls were being recorded and that they went ahead without that. I think it's also undisputed. You see, when you say that, and I think that is a situation, you may not be recognizing the fact that the inmate had no other option if he wanted to contact his lawyer other than using the telephone that was going to record whatever message he had. Well, I think he had three other options. Number one is he had the right to have the meeting in person, and it's undisputed that the jail has meetings or rooms where they can meet in complete confidence. Number two, he can have discussions, correspondence through the mail. There's no dispute that that's also not certain at all. You mean you don't open letters coming in to an inmate? We never got to this issue, but the policy. I know it's not before us, but when you say that he has these options, we have to know, well, does he? Yes. And I suspect you open mail. I'd be shocked if you didn't. I think I put it in, because I'm not sure at this point, I'm almost sure it's in the record, that the policy is to do a search for contraband, not read anything at all. It's a very standard policy, and I'm almost positive it's in the record. It's been a while since I read that section of it. In other words, you open the letters, but you don't read them. Right. Basically, if you look at the Novak case, it talks about the same thing. And that's a pretty standard jail policy. I hope lawyers don't rely too heavily on that opening but not reading standard. Would you think a lawyer would? You know, I don't do criminal law, so I frankly don't know the answer to that. I suspect if he would, he might find himself in a malpractice situation. And the third option is to take the minimal step of the inmate asking the guard, how do I call my attorney in confidence? Or the attorney calling the jail and saying, how do I make a call to my client in confidence? Which would have taken very little to do. It's undisputed in this case. They didn't do that. I mean, similarly, why didn't the County of Riverside disseminate the policy, which would have taken very little to do? Well, it's more complicated. Who do you disseminate it to? The County of Riverside has attorneys from all over Southern California. Every inmate. You say every inmate. When you hand them all these other papers where you're talking about what their rights and their obligations are, you tell the man if you want to make your confidential attorney client communication and telephone calls. It can be filtered out of the recording system, and here's how you do it. I agree. That would have been a good job. I've been the one doing the policy at the time. I would have put that in. But that isn't the question before us. The question is the reviolation of the Constitution. Well, but if it's not, see, the reason that's important, at least in my analysis, is it goes to the adequacy of the consent, to the disclosure. We'll go back to the recent Novak case, because I think it does address that issue, and the Court makes a clear distinction between the Fourth Amendment rights and the Sixth Amendment rights. And the Court holds essentially that for attorney-client, it's the same consent issues as for non-attorneys. And the distinction, to the extent there is one, is under the Sixth Amendment, a claim which has not been presented here. And under the Sixth Amendment, there also has to be proof of actual damage, which also has not been presented here, because there isn't any. I think that's an important distinction to make here. If you look at the Novak case itself, if you look at the end of the second section in the Novak case, it actually addresses exactly this issue. It's talking about that the inmate was aware, both through posted signs and recorded messages, his culprit would be monitored and recorded. He did not ask prison officials if there was a way to communicate with his attorney without having his calls monitored, nor did he ask his federal defender or Novak himself. Wait, wait, wait. What was the advisory there? I have a printout. It was that the prison calls would be monitored. Let's see if I can find the answer on that one. Is that what you just said? Calls are subject to monitoring and recording. That's the wording of the warning. What page? It's on page 100 of the printout, but it's page 100. It's the third paragraph under Part 1. And there's nothing in the opinion anywhere about any mention of the publication of the policy for how to make unrecorded calls. And then if you look to the last paragraph right above section 3, it's like page 103 of the report, it addresses that thing directly on point here. And it talks about that the posted signs and the recorded message, which are pretty close to what we have here, put him on notice, they'd be called. He didn't ask prison officials and didn't choose other methods such as mail or in person. And the court finds that that's enough. I think that's directly on point with what we have here. The one thing I'm not sure about, I mean, obviously it doesn't control our decision, but in Novak, Justice O'Connor also says that as soon as the investigating officer realized that attorney-client communications were being recorded, or that he was listening to them, he should have stopped immediately. And that seems somewhat analogous to the fact that the Riverside County knew it was recording these things and never stopped doing it until 2006. Actually, I think if you look at the opinions that she's talking about, as a matter of State law, there should have been no listening to the actual recording. I don't think she ever said that as a matter of Federal law. At any rate, if you're talking about the actual recording being listened to and causing harm, you have to prove actual harm as a result, and that didn't happen here. There's no evidence of that. So to sum up, I agree that in an ideal world, the message at the beginning, in 2003, would have included the express notice of the opt-out procedures. It has them now. But the lack of it here didn't cause consent not to be consensual, and it didn't cause any damages. So I request the Court to affirm the judgment. All right. Thank you. Counsel.
judges: Farris, Wardlaw, Schwarzer